**DiMonte v. Neumann Medical Ctr.**

306

C.P. of Philadelphia County, April Term 1994, no. 2306.

*Robert Datner,* for plaintiff.
*Jil Fisher,* for defendant Neuman Medical Center.
*Mitchell S. Clair,* for defendant Judge Halbert.

DiBONA, *J.,* December 6, 2000—This is a premises liability action which was tried before the Honorable Marvin R. Halbert and a jury. The jury returned a verdict in favor of the defendant, Neumann Medical Center. Plaintiff's post-trial motions were denied and the plaintiff appealed the matter to the Superior Court. On April 19, 2000, the Superior Court filed an opinion which focused on the contentions of the plaintiff that the trial

judge engaged in varying types of misconduct which resulted in the plaintiff being denied a fair trial. The contentions of the plaintiff fall into four categories as noted by the Superior Court. These are: (1) the trial judge left the bench on numerous occasions during trial; (2) the trial judge enlisted the assistance of a juror to adjust air conditioning vent during trial; (3) the trial judge made and received numerous phone calls from the bench during trial; and (4) the trial judge left the courtroom during trial on two separate occasions. The Superior Court determined that if these contentions were true, such actions may constitute "structural error" as defined in *United States v. Mortimer,* 161 F.3d 240 (3d Cir. 1998) which would entitle the plaintiff to a new trial. The Superior Court then remanded this matter to the court of common pleas for an evidentiary hearing to determine if there is any merit to the plaintiff's claims of "judicial comportment during the trial" and the effect, if any, on the plaintiff's due process right to a fair trial. The Honorable John Herron, administrative judge of the trial division, assigned this matter to the undersigned to conduct such evidentiary hearing and to determine whether Ms. DiMonte was denied a fair trial.

Although the plaintiff proceeded through her appeal and through all of the pre-hearing procedures in this matter pro se, she appeared at the hearing on October 4, 2000 represented by counsel, Robert Datner, Esquire. The defendant, Neumann Medical Center was represented by Jill Fisher, Esquire, and Judge Halbert was represented by Mitchell S. Clair, Esquire. This court heard three days of testimony from numerous witnesses for all parties and permitted counsel for the parties to present extensive closing arguments on October 11, 2000.

## TESTIMONY AND EVIDENCE

Plaintiff presented the testimony of five witnesses to substantiate her claims that the trial judge committed structural error at trial, the result of which was that she was denied a fair trial. The first of these witnesses was her trial attorney, James A. Francis, Esquire. Mr. Francis testified that he recalls numerous phone calls being made and received by the trial judge during trial. Although he was able to hear the judge's voice, he was not able to distinguish any words or the content of any conversations. Mr. Francis also testified that on several occasions during the trial, the judge left the bench to adjust an air conditioning vent in the ceiling of the courtroom. During several instances, the judge enlisted the assistance of the jury foreman, Mr. Brian Ruff, to adjust the vent. The witness did not believe that any testimony was being taken on any of the occasions that the vent was being adjusted and recalled that these situations took place before testimony began or during a break. The witness also recalled the judge leaving the bench on several occasions during testimony to get a drink of water from the water cooler in the rear of the courtroom. Finally, Mr. Francis recalled the trial judge leaving the courtroom during his closing argument for approximately 15-30 seconds and returning with a piece of paper with the number "7" on it which was flashed to the view of the witness. Mr. Francis believed this was a signal from the trial judge, directed to him, that he had seven minutes remaining in his allotted time for closing argument.

The plantiff next presented the testimony of Mr. Brian Ruff, one of the jurors at the original trial. Mr. Ruff testified that he participated in the entire trial and was se-

lected as the foreperson of the jury. The witness testified that he recalls the trial judge receiving frequent telephone calls during the trial, but could not remember whether such calls were taken by the judge during the testimony of any witnesses. Mr. Ruff recalled adjusting the ceiling vent himself several times since he was the tallest juror and recalls assisting the judge when he adjusted the vent. The witness testified that he did not recall there being any witnesses in the witness box while the vent adjusting was taking place and was sure the adjustments did not take place during the testimony of any witnesses. Finally, the witness testified that he did recall the trial judge leaving the courtroom for a brief period of time. Mr. Ruff frankly admitted that the jury never discussed the actions of the judge taking telephone calls, adjusting the vent or any other activity in the courtroom. The witness also admitted that he did not feel the judge was particularly hard on either party and did not favor one side over the other during the trial.

Mr. James P. Carino Jr. next testified for the plaintiff and indicated that he was plaintiff's expert witness at the time of trial. Mr. Carino testified that on at least two occasions during his testimony, the judge spoke on the telephone on the bench. On one of those occasions the judge confirmed a medical appointment which was to take place during the luncheon recess. The witness admitted that he was somewhat distracted by the phone call. Mr. Carino also testified that at one point during his testimony, the judge left the bench to climb on a table to adjust a ceiling vent. The witness believed that the judge may have called a halt for a moment or two while this action took place. The witness did admit on cross-examination that during this adjustment, there was no tes-

timony being taken. At no time during his testimony, was this witness able to point out in the notes of testimony from the original trial where he was actually distracted by either the phone calls or the adjustment of the ceiling vent.

Plaintiff, Doreen DiMonte, then testified on her own behalf as to the conduct of Judge Halbert during the trial. Ms. DiMonte testified that the judge took and received numerous phone calls during the five-day trial. Ms. DiMonte testified that she was able to hear the content of the phone calls which ranged from medical appointments, tickets to the Met and dinner engagements. The witness also testified that there were "many different times" when the judge left the bench during trial. On one occasion during her testimony at trial, the judge paused the proceedings and left the bench to adjust the ceiling vent with the assistance of Mr. Ruff. The witness also recounted the instances in which the judge left the bench to go to the back of the courtroom to the water cooler for a drink of water. The witness also corroborated the testimony of Mr. Francis regarding the judge's absence from the courtroom for "a moment or two" at which time the judge returned to signal that Mr. Francis had seven minutes remaining in his closing argument. Ms. DiMonte stated her opinion that the verdict was affected by the actions of the trial judge; since the conduct of the trial was not worth the judge's attention it, therefore, was not worth the jury's attention either.

As her final witness, the plaintiff presented the testimony of her husband, Dennis Lee Ardell. Mr. Ardell testified that at one point during his testimony the judge left the bench and entered an anteroom adjacent to the courtroom for a brief time and then returned to the court-

room asking that the witness' answer be read back. The witness testified that the judge's absence caused him to be "discombobulated" in his testimony. Mr. Ardell also testified that at various times he heard the judge speaking on the telephone regarding different business and social matters. Testimony was also given by this witness which stated that the judge adjusted the ceiling vent at least three times, in the three days he was present in the courtroom. The witness also testified that he observed the judge leave the courtroom briefly immediately preceding the signal to Mr. Francis that seven minutes remained for the closing argument.

At the conclusion of the plaintiff's case, the defendants moved to dismiss the case based upon plaintiff's failure to meet her burden of proving the alleged structural defects and the fact that the plaintiff had been denied her due process right to a fair trial. This court denied the motion and allowed the defendants to present testimony in opposition to plaintiff's case.

The first witness presented by the defense was Patricia Quinn, a juror in the original trial. Ms. Quinn testified that the judge made her feel relaxed and important to be a juror. She felt the judge was respectful to the jurors, witnesses, attorneys and the parties themselves. In fact, at one point the witness felt that the judge favored the plaintiff and "was on her side." Ms. Quinn recalled the judge on the telephone at one point but was not distracted by it due to the fact that she was attentive to the witness' testimony. The witness remembered the judge adjusting the ceiling vent but did not feel that this act was disruptive or showed any lack of interest in the plaintiff's case. Ms. Quinn summarized her testimony by admitting that nothing that the trial judge said or did

during the course of the trial influenced her decision or her verdict.

The next defense witness called was Ms. Mary A. Mark, another juror. Ms. Mark testified that she did recall the judge standing on a table to adjust a ceiling vent, but that there was no testimony being heard at that time. The witness further explained that she heard nothing from the judge on the telephone about theater tickets, dinner reservations or any other matters. Ms. Mark testified that the judge paid attention to the entire trial, and at no time appeared biased.

Delores Jamison, another juror, then testified on behalf of the defense. Ms. Jamison testified that Judge Halbert acted in a professional manner in the conduct of the trial and at no point appeared biased in favor of or against any party. Ms. Jamison further testified that she did not recall the judge leaving the bench during the trial, but did observe the judge adjusting the ceiling vent prior to the start of a court session by standing on a table. This witness did not feel the judge did or said anything during the trial which influenced her decision and that her decision was based solely on the testimony of the witnesses.

The next witness presented by the defense was Gladys Fenichel M.D., a defense expert witness who testified at trial. This witness testified that she was present in the courtroom for approximately nine hours over two days and that at no time did she observe the judge on the telephone, leaving the courtroom, walking around the courtroom or adjusting ceiling vents. The judge treated all parties with respect and at no time displayed any conduct to indicate he did not take this case seriously.

The defense also presented the testimony of Ms. Janie Henderson, a juror in this case. Ms. Henderson testified that she did recall one occasion during the trial when the judge adjusted an air conditioning vent so that the jurors would be comfortable. The witness also recalls the judge receiving a few phone calls during the trial but was not distracted by same. The witness does not recall the judge leaving the courtroom or going to the back of the court-room for water. Finally, the witness testified that noth-ing was said or done by the judge to influence the deci-sion of this juror.

Another juror, Mr. Matthew J. Kelly, was then called by the defense. Mr. Kelly testified that he did observe the trial judge adjust a ceiling vent but was not distracted by this effort. The witness further testified that he did not recall the judge leaving the courtroom, making or receiving phone calls or walking around the courtroom and getting drinks of water. The witness did testify that he did not recall any distracting behavior by the judge and did not feel that the judge indicated in any way that this case was not important.

Ms. Carolyn E. Mohan, another juror, then testified for the defense. This witness testified that she recalled the judge taking a few telephone calls but none that dis-rupted the proceedings. She also testified that she re-called the judge adjusting the ceiling vent on two occa-sions, but on each occasion the proceedings had stopped and continued after the adjustment was made. The judge was at all times courteous to all parties and at no time showed any favoritism to either side.

Mr. Duane Norris Bedley, an employee of defendant, Neumann Medical Center, then testified. Mr. Bedley was present at defense counsel table during the trial but did

not testify. Mr. Bedley testified that he did not recall any telephone calls made or received by the judge, nor did he recall the judge leaving the courtroom during the trial. He did recall the judge adjusting the ceiling vent prior to the opening addresses to the jury. The witness did recall some chuckling while the judge stood on the table and used a long stick to adjust the vent. At no time did the judge give the impression that he was not paying attention or that this case was not important.

Mary B. Lipinski, Esquire, the attorney for defendant, Assets Protection Inc., at trial, then testified for the defense. Ms. Lipinski testified that she was present in the courtroom throughout the entire trial and that on two or three occasions she witnessed the judge on the phone. She did not recall whether this was during testimony or during a break. Ms. Lipinski also witnessed the judge adjust the ceiling vent, however there was no testimony being taken at the time. The witness also stated that the judge did not walk around the courtroom and did not leave the courtroom. The judge, near the end of closing argument, did stand up and walk towards the jury box, indicating to counsel that he had seven minutes remaining in his closing. The witness testified without qualification that at no time did she feel that any actions of the judge, including the telephone calls, were distracting to her or anyone in the courtroom, including the jurors.

Next, the defense called Stephen Dickerman, the court reporter who was present during the trial and transcribed the notes of testimony of same. Mr. Dickerman has worked for Judge Halbert for the past six years. The witness recalls there being several incoming telephone calls since he noted same in the transcript. The witness also distinctly remembers the judge fixing and adjusting the

ceiling vent since the room where this case was tried "oftentimes was stifling." The customary practice was for the judge to say "excuse me" or some other phrase to stop the proceedings while he adjusted the vent and then to resume the testimony of the witness when this task was completed. Mr. Dickerman had no specific recollection of the judge walking around the courtroom or leaving the courtroom but did recall the judge getting up from the bench and walking to the doorway (out of the sight of the jury) during closing argument to signal to Mr. Francis that he had seven minutes remaining in his closing. This was indicated to be a common practice of Judge Halbert during closing arguments.

Next, the defense called the Honorable Marvin R. Halbert to testify as to his conduct during the trial of this case. Judge Halbert testified as to his judicial career and his accomplishments on the bench during the past 26 1/2 years. He specifically stated that he is particularly concerned with the stress suffered by jurors and tries at all times to make jurors comfortable and at ease in their position. This concern followed through into this case when on November 23, 1998, the judge stopped the proceedings and adjusted the ceiling vent. See exhibit Halbert 3, p. 9, l. 18. The judge felt it was "too close" in the courtroom, meaning it was too warm and the temperature needed to be adjusted. Since the judge did not want to wait for hours for the building maintenance personnel to adjust the vent, he did so himself as he has done dozens of times in the past. The judge testified that he did not want to waste the jurors' time and proceeded to make the adjustment himself. Judge Halbert testified at no time did he speak any words or perform any actions which would have indicated to the jury this was

not an important case or the judge himself had any bias in favor of or against any party. Judge Halbert also addressed the phone calls taken by him during the course of the trial. At all instances when the record indicates a telephone interruption, the court took the call outside the presence of the jury and there was no distraction to the jury. On one occasion at the end of the first day, the judge did take a phone call on the bench. The judge testified that he never engaged in a telephone conversation at any time while testimony was being taken. Judge Halbert further denied leaving the courtroom at any time during the trial without explanation. The judge stated that he was present in the courtroom to hear all testimony and all objections and was able to rule on all objections. The judge did explain that he did enter the doorway of the courtroom, out of the sight of the jury, during the closing argument of Mr. Francis to signal to Mr. Francis the time remaining in his closing. The judge specifically stated that he did not, in fact, leave the courtroom. In sum, the trial judge indicated that at no time did he exhibit any conduct which would have indicated to the jury that he was biased or prejudiced regarding any party to this case.

Finally, the defense called Jill Fisher, Esquire, the attorney for the defendant, Neumann Medical Center. Ms. Fisher testified she recalled the judge taking a telephone call during testimony at the conclusion of the first day of trial, at which time he requested that the testimony be read back prior to sustaining her objection. She also recalled the two other telephone interruptions noted in the record and stated that there was no disruption to the testimony and no distraction to the jury. She also recalled the judge adjusting the ceiling vent prior to the opening

statements on the first day of trial. She recalled that there may have been a second time the vent was adjusted by the judge, but could not specifically state that it happened. On neither occasion was testimony being taken. Ms. Fisher was specific in her testimony that at no time during the trial did the judge get up and walk around the courtroom during the testimony of any witness.

On rebuttal, the plaintiff recalled Mr. Dennis Arnell concerning a conversation he had with attorney Jill Fisher. At the conclusion of this testimony, this proceeding terminated.

## ANALYSIS

This court has reviewed the entire transcript of the jury trial presided over by Judge Halbert. Likewise, this court has reviewed the entire transcript of the testimony taken before this court in October, 2000. This review was undertaken to ascertain the presence of judicial comportment and the effect it had on the plaintiff's due process right to a fair trial. This review was also undertaken with the mandate of *United States v. Mortimer,* 161 F.3d 240 (3d Cir. 1998) as our guide. In *Mortimer,* the trial judge had disappeared from the courtroom, without advance notice or explanation, during the summation by defense counsel. The summation continued in the absence of the judge who actually reappeared in time to thank counsel for her closing speech. The United States Court of Appeals for the third Circuit held that:

"A trial consists of a contest between litigants before a judge. When the judge is absent at a 'critical stage' the forum is destroyed. There is no trial. The structure has been removed. There is no way of repairing it. The framework 'within which the trial proceeds' has been elimi-

nated. The verdict is a nullity." *Mortimer, supra.* (citations omitted)

Under the holding of *Mortimer* there is no need to demonstrate the prejudicial effect of the absence of the judge from the courtroom, only a need to demonstrate that the structural defect occurred. Therefore, this court's review seeks proof from the witnesses who testified at the evidentiary hearing that Judge Halbert actually was absent from the courtroom at a critical stage so as to destroy the structure of the proceeding. Unfortunately for the plaintiff, there is no evidence to substantiate the claim that Judge Halbert was absent from the courtroom at any critical stage of the trial. While this court does not condone the presence of a telephone on the bench in front of a sitting jurist and is even more critical of the use of such telephone for non-court related business, the fact that Judge Halbert answered the phone and spoke briefly thereon regarding his lateness from a scheduled meeting does not qualify as Judge Halbert's absence from the courtroom at a critical stage of the trial. Likewise, while the judge's ascending a chair and positioning himself on a table, while garbed in his judicial robe and while being steadied by a juror, in order to adjust a ceiling heating vent to make the courtroom more comfortable for the jurors and the parties present is not what most observers would expect to see in a courtroom, it cannot be said that such conduct amounts to the removal of the judge from the courtroom at a critical stage of the proceedings. It should also be noted that there is no proof established in this hearing to demonstrate that any adjustments to the ceiling vent took place during the testimony of any witness. In fact, the evidence demonstrates that all

such adjustments were made during brief recesses taken for this particular purpose and not while testimony was being elicited. The only remote incident in which plaintiff could claim that the trial judge removed himself from the proceedings is when the judge stood up and walked to a doorway leading out of the courtroom, which was out of the sight of the jurors, and held up a cardboard sign with the number seven on it as a signal to plaintiff's counsel that he had seven minutes remaining in his closing speech. Although the judge may have been out of the sight of the jury for several seconds, the intent was to notify counsel of the time remaining without distracting the jury from the content of the speech being given. This hardly qualifies as the removal of the trial judge from the courtroom at a critical stage of the proceedings.

While it may be true that the trial judge spoke briefly on the telephone, adjusted ceiling vents and obtained a drink of water during the proceedings, there is no evidence that such conduct disrupted the trial and no evidence that such conduct interfered with the taking of testimony. Mr. Carino testified that the actions of the judge distracted him on occasion and Mr. Ardell testified that at one point he was discombobulated; however, the effect of the actions of the trial judge on the jury was minimal or nonexistent. Seven of the jurors who decided the verdict against the plaintiff testified in the evidentiary hearing held by this court. Each and every juror witness testified that they were not distracted by the actions of the trial judge and most denied that the judge actually left the courtroom at any time. These jurors were aware that the judge occasionally spoke on the telephone and

adjusted the ceiling vent, but the same jurors frankly admitted that they were not distracted by such conduct. The jurors consistently testified that they did not find the actions of the trial judge to be indicative of the lack of importance of the case or his lack of interest therein. The jurors also consistently testified that their verdict was not based on any factor other than the testimony and evidence presented to them. In sum, the jurors were unanimous in stating that the actions of the trial judge had no effect on their verdict.

In conclusion, this court cannot and does not condone all of the behavior of Judge Halbert in the conduct of this trial. While some judges would not comport themselves in the same manner as Judge Halbert, it is clear from the record that his actions were motivated by a deep-seated belief that jurors should be treated with a great deal of respect and afforded the proper amount of comfort during their service to the judicial system. In his efforts to be productive and dispose of cases, Judge Halbert seeks the timely and orderly progression of the trials pending before him and tries to balance these goals against the need to treat jurors with respect and make their service a comfortable and rewarding experience. To him, this means climbing on chairs and tables to adjust the courtroom temperature to keep the parties and jurors comfortable. To the extent that this conduct may be deemed unconventional, this court concurs. To the extent that this conduct is alleged to have denied the plaintiff her due process rights to a fair trial, this court disagrees. The plaintiff has failed in her burden of establishing that structural error has occurred in the trial of this case. There is no proof that the actions of Judge

Halbert removed the structural components required of plaintiff's trial at any critical stage thereof. Likewise, there is no proof that the actions of the trial judge had any effect on plaintiff's due process right to a fair trial. To the contrary, the evidence established in this court's evidentiary hearing demonstrates that plaintiff received a fair trial based upon all of the evidence submitted by plaintiff and defendant.

The verdict of the jury should stand accordingly.